## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>PHILADELPHIA ENERGY SOLUTIONS<br>REFINING AND MARKETING, L.L.C.,<br><br>      Debtor.<br>_____<br><br>NATHAN RUTKOWSKI and MARTIN HARPER,<br>on behalf of themselves and all others similarly<br>situated,<br><br>      Plaintiffs,<br><br>   v.<br><br>PHILADELPHIA ENERGY SOLUTIONS<br>REFINING AND MARKETING, L.L.C.,<br><br>      Defendant. | Chapter 11<br><br>Case No. 19-11626 (KG)<br><br>Class Action<br><br><br><br><br><br>Adv. Pro. No. 19-50278 (KG) |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Nathan Rutkowski and Martin Harper (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, through counsel, bring this action in their individual capacities and on behalf of the class of persons similarly situated as defined below and allege, pursuant to their own knowledge and the investigation of counsel, to wit:

## NATURE OF CASE

1.     This action seeks to recover back pay and benefits pursuant to the Workers Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 *et seq.* (the "WARN Act"), and Chapter 9-1500 of the Philadelphia Code, based upon the course of conduct by Defendant Philadelphia Energy Solutions Refining and Marketing, L.L.C. ("PES" or "Defendant"), that resulted in the termination of their employees without proper legal notice as part of a mass layoff

1

that occurred on July 1, 2019.  According to early reports, over 1,000 employees are expected to be laid off, including approximately 614 union steelworker employees. While some employees have been hired back, at least approximately 114 have not, and PES has indicated no plans to do so.

2.      PES' mass layoff deprived these "workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market." 20 C.F.R. § 639.1(a).

3.      As discussed below, PES failed to provide these terminated employees with the statutory sixty (60) days advance written notice required by the WARN Act.

4.      This action seeks recourse for Defendant's violations of the WARN Act, as set forth in more detail herein.  This action also seeks to recover unpaid bonuses (including deferred bonuses), accrued vacation days, and other benefits PES was contractually (or otherwise) obligated to pay Plaintiffs and Class Members.

5.      This case was originally filed in the United States District Court for the Eastern District of Pennsylvania against both Defendant PES and a related entity, Philadelphia Energy Solutions, LLC. *See Rutkowski et al v. Philadelphia Energy Solutions, LLC et al*, No. 2:19-cv-02849-MMB (E.D. Pa.).  Plaintiffs now pursue their claims against PES in this Court.

## PARTIES

## PLAINTIFFS

### Plaintiff Nathan Rutkowski

6.     Plaintiff Nathan Rutkowski is and was at all material times relevant hereto a resident of Westmont, New Jersey, and a full-time employee of PES (inspector) at the time he was informed of his July 1, 2019 termination.  Mr. Rutkowski worked at PES for 6.5 years.

7.     On June 26, 2019, Plaintiff was one of many PES employees called into a meeting where he and his colleagues were informed that they were being terminated from their employment at PES *en masse* effective July 1, 2019.  Plaintiff was not provided with 60-days notice of his termination under the WARN Act, and was provided with no severance pay as part of his termination.

### Plaintiff Martin Harper

8.     Plaintiff Martin Harper is and was at all material times relevant hereto a resident of Media, Pennsylvania, and a full-time employee of PES (reliability inspector) at the time he was informed of his termination.  Mr. Harper worked at PES for approximately 7 years.

9.     On June 26, 2019, Plaintiff was one of many PES employees called into a meeting room where they were informed that they were being terminated from their employment at PES *en masse* beginning July 1, 2019.  Plaintiff was not provided with 60-days notice of his termination under the WARN Act, and was provided no severance pay as part of his termination.

10.     At all times relevant and material hereto, Plaintiffs and Class Members were either full time employees of PES, or temporary employees other than part-time employees, and are to be counted in determining that the threshold requirements of the WARN Act are met.

## DEFENDANT

**Defendant Philadelphia Energy Solutions Refining and Marketing, L.L.C.**

11.     Upon information and belief, Defendant Philadelphia Energy Solutions Refining and Marketing, L.L.C. was the entity that employed the terminated PES employees.  Defendant Philadelphia Energy Solutions Refining and Marketing, L.L.C. has or had a principal place of business located at 1735 Market St., Philadelphia, PA 19103.   According to Delaware Department of State filings, Defendant Philadelphia Energy Solutions Refining and Marketing, L.L.C. is a limited liability company incorporated under the laws of the state of Delaware, with a registered agent located at Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801.

12.     Upon information and belief Philadelphia Energy Solutions, L.L.C. and Defendant Philadelphia Energy Solutions Refining and Marketing, L.L.C. are agents of one another.  Defendant and Philadelphia Energy Solutions, L.L.C. were or are directly responsible for the failure to provide Plaintiffs and Class Members with the requisite notice under the WARN Act, as alleged herein.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1334, and 1367, as well as 29 U.S.C. §§ 2102 and 2104(a)(5).

14.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1409 and 29 U.S.C. § 2104(a)(5).

15.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O). Plaintiffs confirm their consent, pursuant to Federal Bankruptcy Rule 7008 and Rule 7012-1(b) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this adversary complaint to the extent that it is later determined that the Court,

absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## FACTS

### The June 21, 2019 PES Refinery Fire and Explosions

16.     In the early morning of Friday June 21, 2019, a three-alarm fire tore through the PES complex located in the South Philadelphia neighborhood of Girard Point.  Residents of South Philadelphia neighborhoods awoke to the sounds of loud explosions and shelter-in-place alerts.

17.     PES' refinery in Girard Point—a 335,000 barrel-per-day (bpd) complex (and largest on the East Coast), located in a densely populated area in the southern part of Philadelphia—erupted in flames that resulted in a series of explosions that could be heard from miles away.  A number of refinery workers were reportedly injured as a result of the blaze.

18.     The cause of the fire remains unknown, but city fire officials have stated that the fire started in a butane vat at around 4:00 a.m. on Friday June 21.[1]  Specifically, Deputy Fire Commissioner Craig Murphy stated that a vat of butane had ignited and eventually exploded.[2]

19.     An image depicting the location of the PES refinery where the fire and explosions occurred, as well as surrounding neighborhoods, is below[3]:

---

[1] https://www.reuters.com/article/us-refinery-blast-philadelphia-exclusive/philadelphia-energy-solutions-seeks-to-permanently-shut-oil-refinery-idUSKCN1TR09E?feedType=RSS&feedName=newsOne (last visited June 27, 2019).
[2] https://www.nbcphiladelphia.com/news/local/South-Philly-Refinery-Fire-Explosion-Response-511674901.html (last visited June 27, 2019).
[3] Image available at https://www.inquirer.com/business/philadelphia-refinery-fire-plan-to-close-20190626.html (last visited June 27, 2019).



20.     The PES complex consists of two refineries, Girard Point and Point Breeze. The fire damaged part of the Girard Point refinery. The Point Breeze facility, which has a capacity of 145,000 barrels per day, reportedly can still be operated as a standalone plant.

21.     Nevertheless, as a result of the destruction of the June 21 fire and explosions, on June 26, 2019, PES announced that it would be permanently shutting down the entire South Philadelphia plant (i.e., Girard Point and Point Breeze) in July 2019. PES claimed the explosion at the refinery complex would make it impossible for them to continue operations.

22.     According to one report, the fire was the second in two weeks at the PES complex, spurring Philadelphia Mayor Kenney to call for a task force to look into the cause and community outreach in the wake of the incidents. The task force is now shifting its focus to

helping PES to support employees affected by the shutdown.[4]  The investigation itself could reportedly take months or perhaps years.

23.    The news of the plant shutdown was accompanied by reports of PES' recent history of financial turmoil. The refinery has been on shaky financial grounds for quite some time, and has been forced to slash worker benefits and scale back capital projects to save cash.

24.    Sunoco acquired the PES refineries (Girard and Point Breeze) three decades ago and merged them. It threatened to close the complex in 2012, but public officials and the union's leadership helped create a joint venture between Sunoco and private-equity Carlyle Group in order to avoid the closure.

25.    The new ownership kept the plant operating, aided by an influx of cheap crude oil. Specifically, a period of prosperity ensued for PES that was built on bringing in discounted crude oil by rail car from North Dakota shale development.  However, the refinery fell on financial hard times as the price of oil fell, and it even declared bankruptcy last year.

26.    PES went through bankruptcy in 2018 to reduce and restructure debt, but cash on hand dwindled even after it emerged from those proceedings.[5]  After emerging from bankruptcy, PES saw its cash balance decline to $87.7 million at end of 2018, which was down from $148 million just three months earlier during that year.[6]

27.    After emerging from bankruptcy, Credit Suisse Asset Management and Bardin Hill became the controlling owners of PES, with former primary owners Carlyle Group and Sunoco Logistics, an Energy Transfer subsidiary, holding a minority stake.

---

[4] https://www.reuters.com/article/us-refinery-blast-philadelphia-exclusive/philadelphia-energy-solutions-seeks-to-permanently-shut-oil-refinery-idUSKCN1TR09E (last visited June 27, 2019).
[5] *Id*.
[6] https://www.reuters.com/article/us-usa-refinery-pes/one-of-the-oldest-u-s-refineries-in-trouble-again-in-philadelphia-court-filings-idUSKCN1Q12JC (last visited June 27, 2019).

28.     In January 2019, PES dramatically scaled back a large maintenance project in the area of the refinery where the explosion occurred.[7]

29.     One report indicates that due to financial struggles, in 2019 PES shuffled its management team, froze employee bonuses, and told employees it was deferring matching payments to their retirement accounts until 2020.[8]

30.     An internal email from PES' CEO Mark Smith dated June 26, 2019 accompanied the mass layoff discussed herein and acknowledged the company's years of financial hardship.  Smith commented: "Unfortunately, the recent fire at the refinery complex has forced us to wind-down our operations.  . . . *I know that the last few years have been difficult* . . . ." (emphasis added).

### The June 2019 PES Fire and Explosions Were Reasonably Foreseeable

31.     PES is or was in the business of being entrusted with highly volatile and flammable chemicals. For this reason alone, it was foreseeable to the company that an explosion like the one that occurred on June 21 could reasonably occur at its South Philadelphia refinery.

32.     Indeed, fires, explosions, and similar fire-related incidents are common at oil refineries, including those operating in Philadelphia.  Philadelphia-based refineries—including PES—have a history of these types of incidents that pre-date PES' latest catastrophe.

33.     The explosions and fire at PES' South Philadelphia refinery is only the latest in a string of fires and explosions involving Philadelphia-based refinery compounds.  A timeline of similar incidents is below[9]:

---

[7] *Id*.

[8] https://www.inquirer.com/business/philadelphia-refinery-fire-plan-to-close-20190626.html (last visited June 27, 2019).

a.      In September 1931, four people were killed in a blast at the Atlantic Refining plant (later merged with Richfield Oil Co. to become Arco) at Point Breeze in South Philadelphia.

b.      In February 1932, eighteen people were killed and many others were injured when an oil tanker exploded outside of the Marcus Hook Sunoco refinery.

c.      In September 1960, lightning struck PES' Girard Point refinery (then owned by Gulf), causing a fire that burned for hours, but luckily injuring no one.

d.      In May 1970, a 13-story unit exploded at an Arco plant, killing seven employees and injuring 37 more.

e.      In August 1975, eight firefighters were killed when the Gulf refinery complex caught fire due to an oil storage tank being overfilled.  The fire lasted for days and killed eight firefighters.  The explosion was called one of the worst disasters in Philadelphia Fire Department history.  Two weeks later, the refinery caught fire again—one person, Mayor Frank Rizzo, was injured running from the explosion.

f.      In October 1975, the Arco refinery caught fire.  No one was injured but then-Pennsylvania Attorney General Robert Kane formed a task force to investigate Philadelphia area oil refinery fires and explosions.

g.      In January 1977, four people were injured in another Arco explosion and fire that lasted for hours, requiring 250 firefighters to fight the blaze.

---

[9] *See* https://www.inquirer.com/news/philadelphia-refinery-fire-history-of-explosions-timeline-20190621.html (last visited June 27, 2019).

h.      In January 1988, the Point Breeze refinery (then operated by John Deuss' Atlantic Refining & Marketing Corp.) exploded, injuring one person.

i.      In July 2007, lightning struck the Sunoco Eagle Point refinery in southern New Jersey (later became PES resulting from a partnership between Carlyle Group and Sunoco Inc.), creating an hours-long fire. No one was injured.

j.      In May 2009, a rusty pipe caused a fire at the Marcus Hook Sunoco refinery, resulting in plant closure two years later in 2011.

k.      In August 2011, a small fire at Girard Point broke out, beginning at a pump.

l.      In May 2015, at the same PES refinery, another fire broke out, luckily with no reported injuries.[10]

m.      In December 2016, officials responded to *another* PES fire, this time at the Point Breeze portion of the refiner.[11]

34.     In the aftermath of the PES fire, Kristen Kulinowski, the interim executive of the United States Chemical Safety and Hazard Investigation Board (the federal agency investigating the explosions and fire at PES), commented that "[r]efining, you know, *is a high hazard industry*.  Hydrocarbons are flammable, and explosive."[12]

35.     PES cannot seriously deny the foreseeable nature of explosions at oil refineries, including the latest incident at its Girard Point refinery. Putting aside that a fire or explosion is a

---

[10] *See*
https://www.inquirer.com/philly/news/Fire_at_South_Phila_refinery_appears_under_control.html (last visited June 27, 2019).
[11] *See* https://www.nbcphiladelphia.com/news/local/Philadelphia-Energy-Solutions-Refinery-Fire--405819635.html (last visited June 27, 2019).
[12] https://www.inquirer.com/business/philadelphia-refinery-fire-chemical-safety-board-csb-investigation-20190627.html (last visited June 27, 2019) (emphasis added).

constant hazard/risk at an oil refinery given the sheer nature of the business operations conducted at such sites (i.e., working with highly flammable chemical substances), the long history of fires and explosions at oil refineries in Philadelphia, including numerous fires occurring at PES-operated locations, made the June 2019 incident plainly foreseeable.

36.    The June 21 plant closure was not "unforeseeable" from a business standpoint, either.  As early as September 2018, Christina Simeone—author of an extensive report on the effects of PES' bankruptcy woes[13]—described eventual closure of the PES plant as foreseeable, if not inevitable.[14]  She predicted in her article "Beyond Bankruptcy" that PES "may face bankruptcy again by 2022."[15]  According to Simeone, the plant had been defying laws that require more public notice of the refinery's activities for a long time, which kept most uninformed about pollution concerns of the company.

37.    The following statement encapsulates the prescience of Ms. Simeone's belief that the refinery was financially doomed:

> [C]losure of PES will create hardships for many employees and businesses dependent on the refinery. Relevant stakeholders should acknowledge the potential for the refinery's near-term closure, understand the magnitude of related worker displacement, and plan for the associated needs of refinery workers and those employed in the refinery's business supply chain. Evaluation and planning should take place for the potential need to deploy re-employment services (e.g. retraining, trade adjustment assistance), including assessing local, state, and federal funding resources.[16]

---

[13] Christina Simeone, *Beyond Bankruptcy, The Outlook for Philadelphia's Neighborhood Refinery*, available at https://kleinmanenergy.upenn.edu/sites/default/files/proceedingsreports/Beyond-Bankruptcy_0.pdf (last visited June 27, 2019).

[14] https://kleinmanenergy.upenn.edu/paper/beyond-bankruptcy (last visited June 27, 2019).

[15] *Id*.

[16] *Id*.

## PES Confirms Mass Layoffs on June 26, 2019

38.     On June 26, 2019, PES confirmed that it would be shutting down its refinery within the next month after the massive explosion and fire, with mass layoffs beginning on July 1, 2019.

39.     PES employees facing termination have reported that on Wednesday, June 26, large groups of PES employees were hailed into midday meetings by managers or senior employees; a roll call was taken; and then the large groups were terminated *en masse* in these meetings.  Employees were provided with a form letter informing them of the termination.

40.     The letter, signed by PES Refining and Marketing Solutions Senior Vice President William Goodhart, provided the following, in pertinent part:

> As you know, on June 21, 2019, Philadelphia Energy Solutions Refining and Marketing LLC ("PES") experienced a catastrophic fire and explosion at its refinery complex located at 3144 Passyunk Ave., Philadelphia, PA 19145 (the "Philadelphia Refinery Complex"), resulting in significant damage to PES's equipment and systems.

> Because of this unforeseeable event, this letter will serve as notice under the Federal and City of Philadelphia Worker Adjustment and Retraining Notification Acts (collectively, "WARN") that PES will discontinue operations of its Philadelphia Refinery Complex beginning on July 1, 2019, when your employment will be terminated.  It is anticipated that all layoffs and terminations will be completed within fourteen (14) days thereafter.

> All affected employees at PES have been issued notice as of today regarding this action.  Unfortunately, it was not feasible for PES to provide earlier notice because the business circumstances that followed the fire and explosion were not reasonably foreseeable.

41.     "Today, Philadelphia Energy Solutions made the difficult decision to commence shutdown of the refining complex," CEO Smith, said in a separate statement. "While our teams

include some of the most talented people in the industry, the recent fire at the refinery complex has made it impossible for us to continue operations."[17]

42.    Mr. Smith stated that it will conduct a shut down, and that "[a]s part of the wind-down, the company will position the refinery complex for a sale and restart."[18]

43.    PES officials informed Mayor Jim Kenney said that PES planned to shut down the refinery as soon as July.  On the planned closure, Mayor Kenney stated: "I'm extremely disappointed for the more than one thousand workers who will be immediately impacted by this closure, as well as other businesses that are dependent on the refinery operations."

44.    Ryan O'Callaghan, the president of the United Steelworkers Local 10-1 representing the refinery workers, voiced disgust with the decision to close down the plant, stating "USW is going to fight for every job there . . . .  It appears they're cashing the check and heading for the doors."[19]

45.    Calling the decision to close the plant "a disgrace," Mr. O'Callaghan discussed how the loss of jobs would extend far beyond the refinery's 1,000 employees.  He identified that the 614 steelworkers employed by PES — nearly half of whom are older than 50 — will be laid off by July 12, 2019.

46.    Due to the layoffs, many former PES employees will be forced to relocate far and wide in order to obtain work in the same industry.  Other employees are husbands and wives in single-income families whose families are now left with the reality of not being able to provide for their families.

---

[17] https://www.inquirer.com/business/philadelphia-refinery-fire-plan-to-close-20190626.html
(last visited June 27, 2019).
[18] *Id.*
[19] *Id.*

47.    On June 26, 2019, state legislators from Philadelphia, including Rep. Jordan Harris, House Democratic Whip, Sen. Anthony Williams, Senate Democratic Whip, Rep. Maria Donatucci, Sen. Larry Farnese, Senate Democratic Secretary, and Rep. Elizabeth Fiedler, issued a statement on the announced closure of the PES refinery.  In it, the representatives stated, *inter alia*:

> The explosion and subsequent fire at the PES refinery last week sent a shockwave, both literally and figuratively, through our community. The announcement of the closure of the refinery is another blow to the thousands of workers who earn a living and support their family through their hard work in South Philadelphia.
>
> ***We thoroughly expect PES to comply with the federal WARN Act to help protect the employees who will be losing their job*** and we've already been in contact with the Department of Labor & Industry to ensure that Governor Tom Wolf's Rapid Response unit is ready and will be utilized to help the affected workers.[20]

48.    Unfortunately, PES has made the decision not to comply with the WARN Act. Instead, as USW president O'Callaghan characterized it: "[PES] has insurance on that unit, and they're going to take that money and run."[21]

## The PES Mass Layoffs Without Proper Notice Violate the WARN Act

49.    The sudden closing of the PES refinery has had a huge impact on the Philadelphia economy as a whole over time. PES' mass termination of virtually all of its employees, including Plaintiffs, without providing the statutorily-required sixty (60) day notice, is an immediate violation of the WARN Act.[22]

50.    Specifically, on Wednesday, June 26, 2019, PES filed a WARN notice with the Pennsylvania Department of Labor and Industry that listed the 1,024 jobs being affected by the plant closure. More than 600 of those jobs belong to workers represented by Philadelphia Local

---

[20] http://www.senatorfarnese.com/philadelphia-legislators-release-statement-on-pes-closure (last visited June 27, 2019) (emphasis added).
[21] https://whyy.org/articles/largest-oil-refinery-on-east-coast-will-close-after-fire/ (last visited June 28, 2019).
[22] *See* 29 U.S.C. § 2101.

10-1 union. Workers have been notified by PES, per the WARN notice. Upon information and belief, layoffs were completed within 14 days of the July 1, 2019 closure.[23] This notice is inadequate under the WARN Act.

51.    Plaintiff and Class members were full time employees as defined under the WARN Act and suffered an employment loss under the Act.[24]

52.    Those Class Members, who were temporary employees other than part-time employees, are "affected employees" under the WARN Act because the contracts for temporary employment were a part of a long term relationship between Defendants, temporary employees, and their agents.[25]

53.    In the time prescribed by the WARN Act, PES permanently terminated the affected employees.

54.    PES knew that terminations were anticipated within a week following the June 21 fire, but failed to provide employees and state and local authorities with advance notice (much less the statutorily-mandated back pay) required under the WARN Act.

55.    By failing to properly disclose impending mass layoffs and provide the statutory notice required by the WARN Act, PES precluded employees from looking for other work and/or making contingent plans while PES continued to operate unabated.

56.    As a result of PES's unlawfully unnoticed layoffs, more than a thousand jobs in Philadelphia's Delaware Valley tri-state area and beyond have been lost to the detriment of the local economy, and countless individuals are without wages.

---

[23] https://www.bizjournals.com/philadelphia/news/2019/06/26/report-philadelphia-energy-solutions-refinery-clos.html (last visited June 27, 2019).
[24] *Id.*
[25] *Id.*

57.    As identified by USW president Mr. O'Callaghan, due to the limited number of available similar jobs in the United States, most PES steelworkers at the refinery, many of whom live in South Philadelphia and Delaware County, will have to travel to the Gulf Coast if they hope to remain in the industry.[26]

## CLASS ACTION ALLEGATIONS

58.    Plaintiffs bring this class action pursuant to Federal Rule of Civil Procedure 23, Federal Rule of Bankruptcy Procedure 7023, the WARN Act, 29 U.S.C. § 2104(a)(5), and Philadelphia Code Sections 9-1501 and 9-1504, on behalf of themselves and a class of all similarly situated employees.

59.    Plaintiffs seek to certify a class (the "Class") defined as follows:

All persons formerly employed by PES who were involuntarily terminated as a result of the PES closure and who did not receive the full 60 days advance notice of their termination, and/or who otherwise have not received the full relief afforded to them under the WARN Act and/or Philadelphia Code Sections 9-1501 and 9-1504, and/or pursuant to express or implied contracts with PES.

60.    Excluded from the Class are PES, the legal representatives, heirs, successors and assigns of any excluded person, and members of the federal judiciary.

61.    Upon information and belief and per PES' inadequate WARN Act notice, Plaintiffs believe that the Class comprises in excess of a hundred Class Members, making the Class so numerous that joinder of all Class Members is impracticable. The members of the Class can be identified and located using information contained in the Defendant's human resources and payroll records.

62.    There are common questions of law and/or fact common to the Class that predominate over any questions affecting only individual Class Members. The questions of law

---

[26] https://www.inquirer.com/business/philadelphia-refinery-fire-plan-to-close-20190626.html (last visited June 27, 2019).

and fact common to the Class arising from Defendant's actions include, but are not limited to the following:

    a.    Whether the provisions of the WARN Act apply;

    b.    Whether Plaintiffs and Class Members are "affected employees" as defined by the WARN Act;

    c.    Whether the employee terminations by PES constitute a "termination", "plant closure", and/or "mass layoff" under the WARN Act;

    d.    Whether PES failed to provide the notice(s) required by the WARN Act (29 U.S.C. § 2102(b)) and/or Philadelphia Code Sections 9-1501 and 9-1504;

    e.    Whether PES can avail itself of any of the exceptions or defenses under the WARN Act;

    f.    The appropriate measure of damages under the WARN Act (29 U.S.C. § 2104(a)(2)) and/or Philadelphia Code Sections 9-1501 and 9-1504;

    g.    Whether PES entered into express and/or implied contracts with Plaintiffs and class members entitling them to certain earned benefits, including, *inter alia*, unpaid bonuses (including deferred bonuses), payment for accrued vacation, or other earned, unpaid benefits;

    h.    Whether PES breached those express and/or implied contracts with Plaintiffs; and

    i.    The appropriate measure of damages under any express and/or implied contract so breached by PES.

63.     Plaintiffs' claims are typical of those of the Class Members. Plaintiffs and the

Class Members were employed by PES and subjected to the same kind of unlawful conduct.  The

claims of Plaintiffs and the Class Members are based on the same legal theories and questions of

law and fact pursuant to the WARN Act, The Philadelphia Code, and breaches of express and

implied contracts.

64.     Plaintiffs will fairly and adequately protect the interests of the Class the Plaintiffs

represent.  Plaintiffs' interests do not conflict with the interests of the Class, and the Plaintiffs

intend on prosecuting this action vigorously.

65.     Plaintiffs have retained experienced counsel qualified in class litigation and

counsel are competent to assert the interests of the Class.

66.     The unlawful acts of PES, as alleged herein, constitute a course of conduct

common to Plaintiffs and each Class Member. Prosecution of separate actions by individual

Class Members would create a risk of inconsistent of varying adjudications which would

establish incompatible standards of conduct for Defendant and/or substantially impair or impede

the ability of the individual Class Members to protect their interests.

67.     Upon information and belief, Defendant has acted or refused to act on grounds

generally applicable to the Class.

68.     A class action here is superior to other available methods for fair and efficient

adjudication of the controversy. Class action treatment will allow a large number of similarly

situated individuals to simultaneously pursue their common claims in a single forum in an

efficient manner, without unnecessary duplication of effort and expense that would be required if

numerous individual actions were pursued. However, the affected employees must opt-in to this

litigation so that the right to damages can be determined and quantum of damages can be calculated by the court.

## COUNT I
### VIOLATIONS OF THE UNITED STATES WORKERS ADJUSTMENT AND RETRAINING NOTIFICATION ACT, 29 U.S.C. §§ 2101 *et seq.*
#### (Against Defendants on Behalf of Plaintiffs and the Class)

69.     Plaintiffs repeat and re-allege the allegations of the preceding paragraphs as if fully restated herein.

70.     At all times relevant to this lawsuit, Plaintiffs and Class Members have been entitled to the rights, protections, and benefits provided under the WARN Act.

71.     At all relevant times, PES was an "employer" as defined by the WARN Act, 29 U.S.C. § 2101(a)(1).

72.     At all relevant times, Plaintiffs were "affected employees" as defined under the WARN Act, 29 U.S.C. § 2101(a)(5).

73.     The WARN Act regulates the amount and timing of notice an employer must provide to employees who will be terminated via mass layoffs, as well as the back pay and other associated benefits an affected employee is due based on a violation of the required notice period.

74.     PES is and was subject to the notice and back pay requirements of the WARN Act because Defendant was a business enterprise that employs 100 or more employees, excluding part-time employees, as defined in the WARN Act.  *See* 29 U.S.C. § 2101(1)(A).

75.     The WARN Act required PES to provide Plaintiffs and Class Members with 60 days notice prior to the layoffs complained of herein.

76.     This notice was not properly or timely provided, and PES willfully violated the WARN Act by failing to provide the required notice.

77.     Section 2103 of the WARN Act exempts certain employers from the notice requirements of the WARN Act. *See* 29 U.S.C. § 2103(1)-(2). None of these WARN Act exemptions apply to PES' failure to provide required notice to Plaintiffs and Class Members.

78.     Accordingly, Plaintiffs and Class Members have been damaged by Defendant's conduct and are entitled to the notice and back pay required by the WARN Act. 29 U.S.C. § 2101(1)(A).

**COUNT II**
**VIOLATIONS OF THE CITY OF PHILADELPHIA'S WORKER ADJUSTMENT AND RETRAINING NOTIFICATION ACT**
**Sections 9-1501 - 9-1504 of the Philadelphia Code**
**(Against Defendant on Behalf of Plaintiffs and the Class)**

79.     Plaintiffs repeat and re-allege the allegations of the preceding paragraphs as if fully restated herein.

80.     At all times relevant to this lawsuit, Plaintiffs and Class Members have been entitled to the rights, protections, and benefits provided under the City of Philadelphia's WARN Act.

81.     At all relevant times, PES was an "employer" as defined by the City's WARN Act, § 9-1501(2).

82.     At all relevant times, Plaintiffs were employees of PES.

83.     The City's WARN Act regulates the amount and timing of notice an employer must provide to employees who will be terminated via mass layoffs, as well as the back pay and other associated benefits an affected employee is due based on a violation of the required notice period.

84.     PES is and was subject to the notice and back pay requirements of the City's WARN Act because Defendant is a business enterprise that employs 50 or more employees, for longer than six months prior to the closing of the plant.  *See* § 9-1501(2).

85.     The City's WARN Act required PES to provide Plaintiffs and Class Members with 60 days notice prior to the layoffs complained of herein.

86.     This notice was not provided, and PES violated the WARN Act by failing to provide the required notice.

<u>COUNT III</u>
**BREACH OF EXPRESS CONTRACT**
**(Against Defendant on Behalf of Plaintiffs and the Class)**

87.     Plaintiffs repeat and re-allege the allegations of the preceding paragraphs as if fully restated herein.

88.     On information and belief, valid and enforceable contracts existed between Plaintiffs and class members, on the one hand, and PES, on the other hand, entitling Plaintiffs and class members to a variety of employment benefits including, but not limited to, earned unpaid wages, salary, commissions, bonuses (including deferred bonuses), accrued holiday pay, accrued vacation pay, all accrued and unused paid time off, pension and 401(k) contributions, COBRA benefits, and other benefits.

89.     Those contracts required PES to pay employees these and other benefits at the time of termination of employment.

90.     PES breached these contracts by failing to perform under the terms of its employment contracts with Plaintiffs and class members.

91.     As a direct and proximate result of PES's breaches, Plaintiffs and the class have been harmed, entitling them to damages.

<u>**COUNT IV**</u>
**BREACH OF IMPLIED CONTRACT/UNJUST ENRICHMENT**
**(Against Defendant on Behalf of Plaintiffs and the Class)**

92.     Plaintiffs repeat and re-allege the allegations of the preceding paragraphs as if fully restated herein.

93.     The dealings of the parties indicate a meeting of the minds on the terms of a contractual agreement, such that Plaintiffs and class members were entitled to compensation for their unused, accrued vacation time and other accrued benefits, such as a variety of employment benefits including, but not limited to, earned unpaid wages, salary, commissions, bonuses (including deferred bonuses), accrued holiday pay, accrued vacation pay, all accrued and unused paid time off, pension and 401(k) contributions, COBRA benefits, and other benefits.

94.     In the event that no express contract(s) existed between the parties, implied contracts existed by virtue of PES's and the parties conduct and course of conduct.

95.     PES breached these implied contracts by failing to pay the aforementioned compensation and deliver benefits.

96.     PES has been unjustly enriched at the expense of Plaintiffs and Class Members. Plaintiffs and Class Members conferred benefits to PES by virtue of their employment there, PES accepted and retained these benefits, and under the circumstances herein it would be unjust for PES to retain them without the payment of the value received.

97.     As a direct and proximate result of PES's breaches, Plaintiffs and the class members have been harmed, entitling them to damages.

WHEREFORE, Plaintiffs demand judgment against Defendant together with post judgment interest, attorney's fees, and costs along with any further relief this Court deems just and proper.

Dated: August 29, 2019

Respectfully submitted,

By:   */s/ Michael J. Joyce*
Michael J. Joyce (No. 4563)
**O'KELLY ERNST & JOYCE, LLC**
901 Market Street, Suite 1000
Wilmington, Delaware 19801
Tel: (302)-778-4003
Mjoyce@oelegal.com

-and-

Benjamin F. Johns (admitted pro hac vice)
Andrew W. Ferich (admitted pro hac vice)
Alex M. Kashurba (admitted pro hac vice)
**CHIMICLES SCHWARTZ KRINER
 & DONALDSON-SMITH LLP**
361 W. Lancaster Avenue
Haverford, PA 19041
Tel: (610) 642-8500
Email: bfj@chimicles.com
     awf@chimicles.com
     amk@chimicles.com

*Attorneys for Plaintiffs*