IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>PES Holdings, LLC, *et al.*,[1]<br><br>    Debtors. | Chapter 11<br><br>Case No. 19-11626 (KG)<br><br>(Jointly Administered) |
| NATHAN RUTKOWSKI and MARTIN HARPER,<br>on behalf of themselves ad all others similarly situated,<br><br>    Plaintiffs,<br>v.<br><br>PHILADELPHIA ENERGY SOLUTIONS REFINING AND MARKETING, L.L.C.<br><br>    Defendant. | Adv. Pro. No. 19-50278-KG |

## DEFENDANTS' MOTION TO STAY

Plaintiffs in this adversary proceeding seek to "recover backpay and benefits pursuant to [*inter alia*] the Workers Adjustment and Retraining Notification Act," commonly known as the "WARN Act," based upon the pre-petition termination of certain of the Debtors' employees. The defendant, Philadelphia Energy Solutions Refining and Marketing LLC ("PESRM"), has a strong (and obvious) defense to these claims under the WARN Act itself—the circumstances that precipitated the termination of Plaintiffs' proposed class (an incident at the alkylation unit at PESRM's Girard Point refining facility) were not reasonably foreseeable—and Plaintiffs are unlikely to recover anything for that reason alone.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: PES Holdings, LLC (8157); North Yard GP, LLC (5458); North Yard Logistics, L.P. (5952); PES Administrative Services, LLC (3022); PES Energy Inc. (0661); PES Intermediate, LLC (0074); PES Ultimate Holdings, LLC (6061); and Philadelphia Energy Solutions Refining and Marketing LLC (9574). The Debtors' service address is: 1735 Market Street, Philadelphia, Pennsylvania 19103.

But *even if* Plaintiffs had a viable WARN claim (which they do not), there is no reason at all to distract the Debtors with Plaintiffs' claims at this time. And it is impossible to know at this stage in the bankruptcy proceedings how Plaintiffs' WARN claims or contract claims will be treated, and what (if any) recovery they will be entitled to even if their claims succeed. Thus, to ensure efficient use of estate resources and avoid potentially unnecessary fees and costs, the Court should stay this case.

I.  **BACKGROUND**

    (A)    <u>The Pennsylvania District Court Action and the Adversary Proceeding.</u>

On June 21, 2019, the Debtors suffered a "historic, large-scale, catastrophic incident involving an explosion at the alkylation unit at their Girard Point refining facility." *See* Declaration of Jeffery S. Stein, Chief Restructuring Officer of the Debtors, In Support of Chapter 11 Petitions and First Day Motions, Case No. 19-11626-KG, Dkt. 32 (the "<u>FDD</u>"), ¶ 9; *see also* First Amended Complaint, Dkt. 5 (the "<u>FAC</u>") ¶¶ 16-21.[2] As a consequence of the Girard Point Incident, the refinery is currently inoperable, and will remain inoperable until "satisfactory arrangements can be made with their insurers to rebuild the damaged infrastructure and restart operations." FDD ¶ 44; *see also* FAC ¶ 21 (Debtors announced that they were ceasing operations on June 26, 2019 because of the incident, as "the explosion at the refinery complex would make it impossible for them to continue operations").

On June 26, 2019, shortly after the Girard Point Incident and before this chapter 11 filing, the Debtors notified approximately 1,000 workers that, because of the Girard Point Incident, their employment would be terminated as of July 1, 2019. *See* FAC ¶¶ 39-40; *see also* FDD ¶ 44. As explained in a letter that was distributed to terminated employees on June 26, "[u]nfortunately, it

---

[2] Capitalized terms not defined herein are used in accordance with how they are defined in the FDD.

was not feasible for PES to provide earlier notice because the business circumstances that followed the fire and explosion were not reasonably foreseeable." *See* FAC ¶ 40.

On June 28, 2019, Plaintiffs Nathan Rutkowski and Martin Harper filed a putative class action complaint in the United States District Court for the Eastern District of Pennsylvania seeking to represent the approximately 1,000 terminated employees and to "recover backpay and benefits pursuant to the Workers Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 *et seq.* (the 'WARN ACT') and Chapter 9-1500 of the Pennsylvania Code." *See* 19-CV-02849-MMB, Dkt. 1 (the "District Court Action"). However, subsequent to Plaintiffs filing the District Court Action, the Debtors only actually terminated approximately 114 workers (not including interns and co-ops) as of July 1, 2019. *See* FAC ¶ 1; *see also* FDD ¶ 15. The District Court Action is currently stayed with respect to PESRM by operation of the automatic stay. *See* 19-CV-02849-MMB, Dkt. 6.

On July 21, 2019, the Debtors filed for chapter 11 bankruptcy. *See* Case No. 19-bk-11626, Dkt. No. 1. Less than a week after the Debtors filed their chapter 11 petitions, on July 26, 2019, Plaintiffs commenced this Adversary Proceeding. The Adversary Proceeding seeks substantially the same relief sought in the District Court Action, although it acknowledges that the Debtors re-hired all but approximately 114 of workers who were notified of their termination on June 26, 2019. FAC ¶ 1. On August 29, 2019, the Plaintiffs filed their first amended complaint, adding counts for Breach of Express Contract Count and Breach of Implied Contract/Unjust Enrichment Count. *See* Dkt. 5 at Counts III and IV.

(B)    The Debtors' Chapter 11 Proceedings and Capital Structure.

The Debtors currently have limited liquidity, and they are required to use it in order to preserve the value of the Debtors' estates—it cannot be used to pay down existing creditors without separate authorization. *See* Case No. 19-11626-KG, Dkt. 85. And while there is considerable

value in the estate, substantially all of the Debtors' property is subject to liens granted in favor of the Debtors' secured creditors.  *See* FDD ¶ 10.  It is currently unclear as to what recovery (if any) will be available to unsecured claims.  As discussed further herein, Plaintiffs' claims are unsecured—so it is ultimately unclear whether Plaintiffs could ever realize any recovery in this Adversary Proceeding even if their claims were viable (which they are not).

## II.     LEGAL STANDARD

The decision to "grant or deny a stay is within the court's broad range of discretionary powers."  *In re Twitter, Inc. S'holder Derivative Litig.*, No. CV 18-62-VAC-MPT, 2018 WL 3536085, at *2 (D. Del. July 23, 2018), *report and recommendation adopted,* No. CV 18-062 (MN), 2018 WL 4326986 (D. Del. Sept. 10, 2018); *In re Glob. Prot. USA, Inc.*, No. 12-16322-ABA, 2015 WL 194198, at *2 (Bankr. D.N.J. Jan. 13, 2015) ("The decision to grant a stay is within the discretion of the trial court."); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) ("[T]he power to stay proceedings is incidental to power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.").  In assessing whether a stay is appropriate, courts will consider "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the non-moving party, i.e., the balance of harms; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay will promote judicial economy, e.g., how close to trial has the litigation advanced." *Husqvarna AB v. The Toro Co.*, No. CV 15-856-SLR, 2016 WL 5213904, at *1 (D. Del. Sept. 20, 2016) (citation omitted); *see also In re Twitter, Inc.*, 2018 WL 3536085, at *2.

Courts will grant a stay where doing so would avoid wasting the court and the parties' resources.  *Aerotel, Ltd. v. IDT Corp.*, No. 03CIV.6496 (RJH) (FM), 2003 WL 23100263, at *2 (S.D.N.Y. Dec. 30, 2003) (stay was warranted where there was "a substantial risk of wasting the resources of this Court and the parties should [litigant's] belief [patent review would leave patents

4

unchanged] prove faulty"); *UCB, Inc. v. Hetero USA Inc.*, 277 F. Supp. 3d 687, 690 (D. Del. 2017) (staying litigation where it would be "potentially wasteful" depending on outcome of patent review). It is especially appropriate to grant a stay to conserve resources where resolution of a separate proceeding might "obviate at least part of the controversy." *See Cheyney State Coll. Faculty v. Hufstedler*, 703 F.2d 732, 737 (3d Cir. 1983) (stay not improper where "administrative proceedings in the U.S. Department of Education might obviate at least part of the controversy and stayed further judicial proceedings"); *see also Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am., AFL-CIO*, 544 F.2d 1207, 1215 (3d Cir. 1976) ("In the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues.").

## III.  ARGUMENT

The Court should stay the Adversary Proceeding pending further development of the Debtors' bankruptcy proceedings and additional clarity regarding the prospect of junior creditor recoveries. Plaintiffs' claims are frivolous; their assertion that the Girard Point Incident was "foreseeable" such that the Debtors had to give them prior notice of termination under the WARN act is absurd on its face. Their breach of contract claims are no more viable. Regardless, because the claims are unsecured and unsecured creditors may not receive much (if any) recovery, there is a clear possibility that adjudicating the Adversary Proceeding will simply waste the Parties' and the Court's time, as well as the estate's valuable resources. Moreover, it would be especially appropriate to avoid expending estate resources unless and until doing so clearly necessary in light of Complaint's legal infirmity under the plain terms of the WARN Act. Here, multiple factors weigh in favor of staying this litigation.

*First*, it is unclear if plaintiffs will ever recover, *even if* they prevail on the merits. Plaintiffs' WARN Act claims accrued on June 26, 2019, as on the day the Debtors notified certain

5

of its employees that their employment would be terminated as of July 1, 2019. *See* FAC ¶¶ 6, 38; *In re Powermate Holding Corp.*, 394 B.R. 765, 778 (D. Del. 2008) (Gross, J.) ("the rights of workers discharged in violation of the WARN Act accrue in their entirety upon their termination"). The Debtors did not file their Bankruptcy Petitions until July 21, 2019, well after it notified Plaintiffs that they were terminated. As this Court has previously noted, courts have "consistently held that WARN Act damages based on pre-petition terminations only received fourth or fifth level priority" general unsecured claims—they are not entitled to administrative priority. *In re Powermate*, 394 B.R. at 777 (holding WARN Act claims for pre-petition terminations would be "general unsecured claims rather than administrative expenses"); *In re First Magnus Fin. Corp.*, 390 B.R. 667, 677, 679 (Bankr. D. Ariz. 2008), *aff'd,* 403 B.R. 659 (D. Ariz. 2009) (because "WARN Act employees had been terminated prior to the filing of the instant chapter 11 case," they could not "show entitlement to administrative claimant status"; they only had "a priority over other unsecured creditors" up to a certain point, and "a general unsecured claim for other WARN Act damages in excess" of that cap); *see also* 11 U.S.C. § 507(a)(4)-(5). Plaintiff's breach of contract claims are unsecured as well. *See Matter of Cont'l Airlines, Inc.*, 146 B.R. 520, 532 (Bankr. D. Del. 1992) (when alleged breach is "pre-petition…the damages are paid with other general unsecured claims"). Thus, Plaintiffs are—at best—unsecured creditors.

Given the size of the Debtors' secured debt obligations, and the fact that the Debtors generally lack unencumbered assets, it is not yet clear that any junior creditors—including Plaintiffs—will receive any recovery in this case even if they have viable claims. *See* FDD ¶ 10; *see also* FDD ¶¶ 31, 42. In other words, this whole controversy could be "obviated" by the simple reality that there are no funds to pay Plaintiffs. A stay is therefore warranted until it becomes clear whether value will be available for Plaintiffs even if they win their claims on the merits. *See*

*Cheyney State*, 703 F.2d at 737 (stay was not improper where separate proceedings might "obviate at least part of the controversy and stayed further judicial proceedings").

**Second,** Plaintiff will not be unduly prejudiced or tactically disadvantaged if this case is stayed. *See Husquavara AB*, 2016 WL 5213904, at *1 (first factor is undue prejudice). Indeed, Plaintiffs benefit from a stay, too—it is not in Plaintiffs' interests either to spend resources litigating claims upon which they may never recover even if they win. This counsels in favor of granting a stay. *See Aerotel, Ltd.*, 2003 WL 23100263, at *2 (stay was warranted where patent decision could render Plaintiff's claim worthless); *UCB, Inc.* 277 F. Supp. 3d at 690 (same).

**Third**, granting a stay will promote judicial economy. The Court has spent few resources on this Adversary Proceeding to date, and it may never need to. This further supports granting the Debtors' request to stay the Adversary Proceeding. *See Aerotel, Ltd.*, 2003 WL 23100263, at *2 (stay was warranted where, *inter alia*, there was a "substantial risk of wasting the resources of this Court…"); *Husquavara AB*, 2016 WL 5213904, at *1 ("judicial economy" weighed in favor of a stay where "court has not yet directed its scarce resources to the merits of this dispute"). Indeed, staying this litigation in order to protect the interests of judicial economy would be consistent with the Bankruptcy Code's main goals of enabling courts and debtors to adjudicate claims in ways that "conserve estate resources" and maximize distributable value. *See In re Bankest Capital Corp.*, No. 04-10941-BKC-AJC, 2007 WL 656557, at *4 (Bankr. S.D. Fla. Feb. 27, 2007) (trustee had the "express power to conserve estate resources" in handling claim objections); *In re Gem Tire & Serv. Co.*, 117 B.R. 874, 878 (Bankr. S.D. Tex. 1990) ("goals of bankruptcy law" are "to maximize the value of the assets of the bankruptcy estate in the most cost efficient way for the benefit of those who own those assets").

***Finally***, it would be even more inequitable to expend considerable estate resources litigating the Adversary Proceeding now, given plaintiffs' low likelihood of success on merits. Specifically, because the Debtors terminated Plaintiffs and other proposed class members because of unforeseeable nature of the business circumstances at issue here (i.e., the Girard Point Incident), they are not liable for damages under the WARN Act.[3]

The "WARN Act was adopted in response to the extensive worker dislocation that occurred in the 1970s and 1980s," when numerous "companies were merged, acquired, or closed" and "many employees lost their jobs, often without notice"—indeed, sometimes "the projected closing was concealed from the employees." *See Hotel Employees & Rest. Employees Int'l Union Local 54 v. Elsinore Shore Assocs.*, 173 F.3d 175, 182 (3d Cir. 1999) (citations omitted). The WARN Act "protect[s] workers and their families from these situations" by "allow[ing] workers [time] 'to adjust to the prospective loss of employment, to seek and obtain alternative jobs and… to enter skill training or retraining that will allow [them] to successfully compete in the job market.'" *Id.*

But "Congress was not blind to the issue of foreseeability," *In re APA Transp.* 541 F.3d at 248-49, and the WARN Act was not intended to require an employer to provide notice "when there is a *possibility* that a business may fail at some undetermined time in the future," *see In re AE Liquidation*, 556 B.R. at 618 (emphasis in original). Thus, there is an exception to the WARN Act for situations where employees are terminated as a result of unforeseeable business circumstances. 29 U.S.C. § 2102(b)(2)(A) ("An employer may order a plant closing or mass layoff before the

---

[3] As of the Plaintiff's most recent amended complaint, Plaintiff also asserts PESRM is liable for breach of contract (either express or implied). These claims will fare no better than the WARN Act claims, though. The Amended Complaint does not even allege what the purported contracts are, because there are none. Plaintiffs will be unable to prove the existence of any contractual arrangement express or implied, that would require PESRM to pay them after termination. Moreover, the benefits of employees represented by the Union are controlled by the applicable collective bargaining agreement and any breach of contract claims are preempted by the Labor Management Relations Act, 29 U.S.C. S 185(a). Finally, the rationale outlined *supra* regarding likelihood of recovery and judicial comply apply equally with respect to these contract claims.

conclusion of the 60-day period if the closing or mass layoff is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required."). The unforeseeable business circumstances exception applies when the employer "demonstrate[s] (1) that the business circumstances that caused the layoff were not reasonably foreseeable and (2) that those circumstances were the cause of the layoff." *See In re AE Liquidation, Inc.*, 866 F.3d at 523. The exception is "**not** narrowly construed." *Id.* at 617-18 (citations omitted) (emphasis added). It is clear that the unforeseeable business circumstances applies in this case, and Plaintiffs' suggestion to the contrary defies logic.

Here, the second element, that the allegedly unforeseeable event precipitated the terminations, is undisputed. Nobody denies that the Girard Point Incident caused the layoffs. *See* FAC ¶ 40; FDD ¶ 44. Plaintiffs attempt to plead their way around the first element by alleging the Girard Point Incident *was* somehow foreseeable. *See, e.g.,* FAC ¶ 31. But courts all agree that the "WARN Act is triggered when a mass layoff becomes probable—that is, when the objective facts reflect that the layoff was more likely than not." *In re AE Liquidation, Inc.*, 866 F.3d at 530. While explosions can occur at refineries, it is simply absurd to allege the Debtors could have foreseen the Girard Point Incident, let alone known based on "objective facts" that the explosion that occurred was "more likely than not." *See id*. Indeed, had the Debtors known an explosion was more than 50% likely to occur, they of course would have done everything in their power to stop it. But the Debtors did not foresee an explosion, indeed no one foresaw an explosion, and the Debtors were unable to stop it.

Consistent with this logic, courts have held that plant accidents constitute "unforeseeable business circumstances." *See Bradley v. Sequoyah Fuels Corp.*, 847 F. Supp. 863, 865 (E.D. Ok. 1994) (where "a sudden and unexpected reaction" at a nuclear chemical plant that emitted "a

9

hazardous, toxic and potentially lethal gas" ultimately led to terminations, reaction constituted a "sudden and unforeseeable" event excusing WARN Act liability); *see also* WARN Act Final Rule, 54 Fed. Reg. 16062 (1989) ("…fires... may constitute unforeseeable business circumstances"). The Girard Point Incident was certainly no more foreseeable than the sudden release of toxic gas in *Bradley*—like the employer in that case, the Debtors operate in an inherently hazardous industry, but like the toxic gas leak in *Bradley*, the Girard Point explosion was "sudden and unforeseeable."

## IV.  CONCLUSION

In sum, Plaintiffs' claims are unsecured, unlikely to prevail, and there are limited estate resources such that it is unclear Plaintiffs could recover even in the unlikely event they prevailed on the merits. It would be expensive and districting to litigate these claims in the meantime. Plaintiff will not be prejudiced by a stay, but the Debtors' estates will be substantially prejudiced if the action proceeds. Accordingly, the Adversary Proceeding should be stayed.

[*Remainder of page intentionally left blank*]

| | |
|---|---|
| Dated: September 12, 2019<br>Wilmington, Delaware | */s/ Laura Davis Jones* |

Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Peter J. Keane (DE Bar No. 5503)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:   (302) 652-4100
Facsimile:   (302) 652-4400
Email:   ljones@pszjlaw.com
pkeane@pszjlaw.com
joneill@pszjlaw.com

- and -

Edward O. Sassower, P.C.
Steven N. Serajeddini (admitted *pro hac vice*)
Matthew C. Fagen (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900
Email:   edward.sassower@kirkland.com
steven.serajeddini@kirkland.com
matthew.fagen@kirkland.com

- and -

Michael B. Slade (admitted *pro hac vice*)
Nader R. Boulos (admitted *pro hac vice*)
William T. Pruitt (admitted *pro hac vice*)
Whitney L. Becker (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 N. LaSalle
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200
Email:   michael.slade@kirkland.com
nader.boulos@kirkland.com
william.pruitt@kirkland.com
whitney.becker@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*